IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 21-CR-197-JFH |
| THOMAS RAYMOND PHILLIPS, III, | |
| Defendant. | |

**OPINION AND ORDER**

Before the Court is a motion to suppress ("Motion") filed by Defendant Thomas Raymond Phillips, III ("Defendant"). Dkt. No. 59. The Court referred the Motion to United States Magistrate Judge Kimberly E. West for issuance of a report and recommendation ("R&R"). Dkt. No. 102. Magistrate Judge West held a hearing on the Motion on November 1, 2022 [Dkt. No. 129] and issued her R&R on November 18, 2022 [Dkt. No. 131]. The R&R recommends the Court deny Defendant's Motion. *Id.* Defendant filed an objection to the R&R ("Objection") [Dkt. No. 132] and the Government filed a response to the Objection [Dkt. No. 134]. For the reasons stated herein, the Court ADOPTS the R&R in this case and DENIES Defendant's Motion.

**I.      BACKGROUND**

On December 19, 2020, the Choctaw County Sheriff's Office was dispatched to Tommy's Bar located at 3736 US Highway 70 in Fort Towson, Oklahoma, on a report of shots fired. Dkt. No. 59 at 2. Upon arrival, Choctaw County Sheriff's deputies located BJ Youngblood ("Youngblood") inside the bar with an apparent gunshot wound to the head. *Id.* Youngblood was deceased. *Id.* Choctaw County Sheriff's deputies and investigators from the Oklahoma State Bureau of Investigation ("OSBI") (collectively "state law enforcement officers") commenced an investigation. *Id.* at 2-3.

In the early morning of December 20, 2020, state law enforcement officers observed a vehicle matching the description of Defendant's vehicle. *Id*. at 2. The vehicle was in fact Defendant's. *Id*. State law enforcement officers pursued the vehicle and, following a brief chase, the vehicle left the roadway and collided with a large tree, resulting in serious injuries to Defendant. *Id*. Defendant was immediately flown to the University of Oklahoma Medical Center for treatment. *Id*.

On December 22, 2020, OSBI agents Miles Keene and Adam Whitney visited Defendant in the hospital to conduct an interview concerning the alleged events on the night of December 19, 2020. *Id*.[1] Agents Keene and Whitney told Defendant that they were with the OSBI, stated that they were there to discuss the incident that allegedly occurred on December 19, 2020, and informed Defendant of his rights, including his rights to an attorney and to remain silent. Dkt. No. 131 at 3-4; *see also* Government Exhibit 1. Defendant stated that he understood his rights and proceeded to sign a Waiver of Rights. Dkt. No. 131 at 4.[2,3] In the interview, which began at 11:35 a.m., Defendant answered questions on a variety of subjects surrounding the events of December 19, 2020. *Id*. at 5. Later in the interview, Defendant gave permission for the OSBI agents to search his house, truck, and cell phone, and executed a Consent to Examine/Search of Telephone. *Id*. At the time of the interview, Defendant was being treated with various medications to manage his pain. *Id*. at 4. Specifically, on the date of the interview, Defendant was administered 5mg of oral

---

[1] The entire interview was audio recorded. *See* Government Exhibit 1.

[2] Defendant asked Agent Keene whether the Waiver of Rights was an admission of guilt, and Agent Keene informed him that it was not.

[3] *See Miranda v. Arizona*, 382 U.S. 436 (1966).

oxycodone (3:08 a.m.), 1,000mg of oral methocarbamol (6:08 a.m.), and 4mg of morphine via IV (6:50 a.m. and 10:29 a.m.).  *Id*.

Ultimately, Defendant was arrested in connection with Youngblood's death.  Dkt. No. 2.  On May 13, 2021, the Government filed an Indictment, charging Defendant with:  (1) one count of first-degree murder, in violation of 18 U.S.C. §§ 111(a), 1151, and 1153; and (2) one count of causing the death of a person in the course of a violation of 18 U.S.C. § 924(c), in violation of 18 U.S.C. § 924(j)(1).  Dkt. No. 17.

On November 22, 2021, Defendant filed the instant motion to suppress [Dkt. No. 59], requesting that the waivers be deemed null and void and the statements made by Defendant on December 22, 2022, be suppressed and deemed inadmissible, involuntary statements made while under the influence of drugs.  Dkt. No. 59 at 3, *ff*.  As noted hereinabove, the undersigned referred Defendant's motion to suppress to Magistrate Judge Kimberly E. West, who held a hearing on the matter and thereafter recommended that the motion be denied.  Dkt. No. 131.

II.   **DISCUSSION**

When a party objects to an R&R, the Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  *Id*.  The Court "may also receive further evidence or recommit the matter to the magistrate judge with instructions."  *Id*.

In his Objection, Defendant takes issue with the R&R's determination that Defendant's waivers and statements made December 22, 2020, were made voluntarily, knowingly, and intelligently.  Dkt. No. 133.  Defendant also disagrees with the R&R's interpretation of case law

on which he relies. *Id*. at 2-3; *See also Schneckloth v. Bustamonte*, 412 U.S. 218 (1973); *United States v. Harrison*, 639 F.3d 1273 (10th Cir. 2011).

As the R&R correctly notes, for a waiver of rights to be valid it must be given voluntarily, knowingly, and intelligently. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Whether a waiver is given voluntarily, knowingly, and intelligently involves two (2) separate inquiries. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id*. Second, the Court must determine if the waiver was made knowingly and intelligently, *i.e.*, that it was made with "full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*.

As explained below, the Court must consider the totality of the circumstances when evaluating whether a given waiver was made voluntarily, knowingly, and intelligently. *Id*. Factors considered in such an evaluation include (1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subject to physical punishment. *United States v. Lopez*, 437 F.3d 1059, 1063-64) (10th Cir. 2006) (citing *United States v. Toles*, 297 F.3d 959, 965-66 (10th Cir. 2002)). The Government bears the burden of showing, by a preponderance of the evidence, that the waiver was made without coercion and with the requisite level of comprehension. *Missouri v. Seibert*, 542 U.S. 600, 608, n. 1 (2004).

The Court finds that the R&R correctly applied the above-cited factors to the totality of the circumstances in this case and correctly determined that Defendant's statements and consents were given voluntarily, knowingly, and intelligently. Dkt. No. 131 at 7, *ff*. With respect to the first inquiry—whether the waiver was "the product of a free and deliberate choice rather than

intimidation, coercion, or deception"—the R&R correctly notes that Defendant's motion to suppress [Dkt. No. 59] does not argue that the waiver was procured through coercion. Dkt. No. 131. However, in his Objection, Defendant states for the first time that "the agents did urge Defendant to talk," and argues that such "urging represented a coercion . . . ." Dkt. No. 133 at 3.

The Court need not reach the merits of this argument because Defendant raised it for the first time in the Objection. "Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996). "[A]n unsuccessful party is not entitled as of right to de novo review . . . of an argument never seasonably raised before the magistrate." *Id.* (quoting *Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988)). Yet even were the Court to entertain this argument, the OSBI agents "urging" the Defendant to talk, as reflected in the recording of the interview, does not rise remotely close to the level of coercion. Dkt. No. 133 at 2; *see also* Government Exhibit 1. As such, the decisive inquiry is whether Defendant's waiver and corresponding statements were made knowingly and intelligently. *Moran*, 475 U.S. at 421.

Defendant argues that the oxycodone, methocarbamol, and morphine prescribed for pain management rendered his waivers and statements involuntary. Dkt. No. 133 at 3. Put differently, Defendant claims he was incapable of knowingly and intelligently waiving his rights. However, as the R&R notes, the Tenth Circuit has repeatedly held that being under the influence of drugs is not enough to create a presumption that a defendant did not knowingly or intelligently waive his or her rights [Dkt. No. 131 at 9]. *See United States v. Burson*, 531 F.3d 1254, 1260 (10th Cir. 2008) ("The mere fact of drug use does not render a defendant incapable of waiving his rights."); *United States v. Muniz*, 1 F.3d 1018, 1022 (10th Cir. 1993) ("The state of intoxication does not automatically render a statement involuntary."); *United States v. Morris*, 287 F.3d 985, 988-89

5

(10th Cir. 2002) (holding that a defendant knowingly and intelligently waived his *Miranda* rights while recovering from gunshot wounds in the hospital, despite his argument that his mental capacity was affected by pain, the effects of pain medication, and the post-traumatic stress associated with being shot multiple times in the back); *United States v. Curtis*, 344 F.3d 1057, 1065-67 (10th Cir. 2003) (finding a valid waiver where the defendant was allegedly under the influence of marijuana, crack cocaine, and alcohol).

Applying the factors from *United States v. Lopez*: first, there is no indication in the record (and Defendant does not ague) that Defendant's age, intelligence, or education prevented him from understanding his circumstances or the consequences of his action.  Second, although Defendant points out he was "unable to leave the hospital room due to his injuries" [Dkt. No. 133 at 1-2], he was not in fact "detained," and he was informed that he could refuse to answer questions or cease answering at any point in the interview.  Third, the interview lasted just seventy (70) minutes, and, again, Defendant was free to stop answering questions at any time. Regarding the fourth factor, the record is replete with instances in which OSBI agents informed Defendant of his *Miranda* rights.  Lastly, there is no conceivable argument that Defendant was subject to "physical punishment."  Considering the totality of the circumstances as the Court must, the Court finds that Defendant's waiver and subsequent statements were made knowingly and intelligently.

Finally, in his Objection Defendant readvances two (2) cases that he claims apply here and support his position that the motion to suppress should be granted.[4]  Dkt. No. 133 at 2.  Defendant

---

[4] Defendant also identifies a third case: *Beecher v. Alabama*, 389 U.S. 35 (1967). However, in his Objection Defendant concedes that *Beecher* "relied more on coercion than drugs rendering the statements voluntary . . . ."  As the issue of coercion is not before the Court, it is unnecessary to address *Beecher* here.

first identifies *Schneckloth v. Bustamontem*, 412 U.S. 218 (1973), in which the Supreme Court stated:

> [There is] no talismanic definition of 'voluntariness,' mechanically applicable to the host of situations where the question has arisen. The notion of voluntariness is itself amphibian. It cannot be taken literally to mean a knowing choice. Except **where a person is unconscious or drugged** or other wise lacks capacity for conscious choice, all incriminating statements – even those made under brutal treatment – are voluntary in the sense of representing a choice of alternatives.

*Schneckloth*, 412 U.S. at 224 (emphasis supplied by Defendant). The Court is not swayed by Defendant's citation to *Schneckloth*, and specifically the bolded portion of that opinion. In fact, the Court believes the more significant phrase for the purpose of this analysis is, "or otherwise lacks capacity for conscious choice . . . ." *Id*. This phrase informs the Supreme Court's meaning of the relatively broad term "drugged." The undersigned is confident the Supreme Court is not referring to medically administered and measured pain medication. In any event, as explained above, Defendant did not lack capacity for "conscious choice." *Id*.

Defendant also relied upon *United States v. Harrison*, 639 F.3d 1273 (10th Cir. 2011) for the proposition that a "defendant's mental state is a factor in determining that voluntariness of a statement, and whether there was coercion." Dkt. No. 133 at 2.[5] The Court agrees with this statement—Defendant's mental state is the crux of the matter. But as noted herein, the Court finds that, considering the totality of the circumstances, Defendant's waiver and subsequent statements were given voluntarily, knowingly, and intelligently. The cases advanced by Defendant do not change this conclusion.

---

[5] *See also* note 4, *supra*.

7

IT IS THEREFORE ORDERED that the Court ACCEPTS the Magistrate Judge's R&R [Dkt. No. 131], DENIES Defendant's motion to suppress [Dkt. No. 59], and OVERRULES Defendant's objection to the R&R [Dkt. No. 132].

Dated this 15th day of May 2023.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE