IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>THOMAS RAYMOND PHILLIPS, III,<br><br>Defendant. | Case No. 21-CR-197-JFH |

**OPINION AND ORDER**

Before the Court is the United States of America's ("Government") motion in limine to exclude Defendant Thomas Raymond Phillips, III's ("Defendant") expert witness (the "Motion"). Dkt. No. 150. The Court referred the Motion to United States Magistrate Judge Kimberly E. West for issuance of a report and recommendation ("R&R"). Dkt. No. 151. On March 6, 2023, Judge West held a *Daubert* hearing to determine whether Defendant's expert was qualified to serve as an expert and whether her proffered testimony would be relevant, reliable, and helpful to the jury. Dkt. No. 183 at 2. Judge West issued an R&R on April 13, 2023, recommending that the Government's Motion be denied. Dkt. No. 183. The Government has filed an objection to the R&R ("Objection") [Dkt. No. 191], and Defendant has filed a response to the Objection and in support of the R&R [Dkt. No.193]. For the reasons stated, the Court ADOPTS the R&R in this case and DENIES the Government's Motion.

**I.     BACKGROUND**

On December 19, 2020, the Choctaw County Sheriff's Office was dispatched to Tommy's Bar located in Fort Towson, Oklahoma, on a report of shots fired. Dkt. No. 150 at 1. Upon arrival, Choctaw County Sheriff's deputies located BJ Youngblood ("Youngblood") inside the bar with an apparent gunshot wound to the head. *Id.* at 1-2. Youngblood was deceased. *Id.* Choctaw

County Sheriff's deputies and investigators from the Oklahoma State Bureau of Investigation commenced an investigation. *Id.* at 2.

In the early morning of December 20, 2020, state law enforcement officers observed a vehicle matching the description of Defendant's vehicle. *Id*. The vehicle was in fact Defendant's. *Id*. The officers pursued the vehicle and, following a brief chase, the vehicle left the roadway and collided with a large tree, resulting in serious injuries to Defendant. *Id*. Defendant was immediately flown to the University of Oklahoma Medical Center for treatment. *Id*.

Defendant was ultimately arrested in connection with Youngblood's death. Dkt. No. 2. On May 13, 2021, the Government filed an Indictment, charging Defendant with: (1) one count of first-degree murder, in violation of 18 U.S.C. §§ 111(a), 1151, and 1153; and (2) one count of causing the death of a person in the course of a violation of 18 U.S.C. § 924(c), in violation of 18 U.S.C. § 924(j)(1). Dkt. No. 17.

Defendant has retained as an expert witness Dr. Jeanine M. Galusha, PhD ("Dr. Galusha"), a neuropsychologist with a specialty in forensic neuropsychology and forensic psychology. Dkt. No. 57 at ¶ 10. Dr. Galusha interviewed and performed a neuropsychological evaluation of Defendant on October 7 and 8, 2021, and issued a report of her diagnoses, conclusions, and opinions on February 10, 2022. Dkt. No. 150, Ex. 1. Dr. Galusha diagnosed Defendant with post-traumatic stress disorder ("PTSD"), mild neurocognitive disorder due to a traumatic brain injury ("TBI"), unspecified depressive disorder, and alcohol use disorder. *Id*. at 9.

As noted, on January 10, 2023, the Government filed a motion in limine to exclude Dr. Galusha from testifying and to prevent the admission of her report into evidence. Dkt. No. 150. The Government argued that Dr. Galusha did not pass Rule 702 muster for several reasons. *Id*. First, the Government asserted that "Dr. Galusha's conclusions and opinions are not reliable"

because Dr. Galusha is not a neurologist. *Id*. at 6-7. Furthermore, "other than one publication currently under review, Dr. Galusha presents no expertise in PTSD and how it impacts an individual." *Id*. at 8. Put differently, the Government argued that Dr. Galusha is not qualified to testify regarding the relevant subject matter.

Separately, the Government argued that Dr. Galusha should be prevented from testifying because her conclusions and opinions are "based on defendant's self-serving statements and self-reporting tests." *Id*. at 9. The Government asserted that "[a]llowing Dr. Galusha to testify in this manner would simply allow for the admission of self-serving hearsay by the defendant in his case-in-chief." *Id*. at 10; *see also id*. at 11 ("Attaching an expert to this type of conclusion risks jurors adopting it as their own conclusion and, therefore, should not be admissible.").

The undersigned referred the Government's Motion to Magistrate Judge West, who conducted a *Daubert* hearing on March 6, 2023. Dkt. No. 183. Dr. Galusha testified at the Daubert hearing, after which, on April 13, 2023, Magistrate Judge West entered the subject R&R recommending that the Government's Motion be denied. *Id*. at 20. The R&R concluded that Dr. Galusha was qualified, her methodology was sound, and that her opinions were relevant, reliable, and would be helpful to the jury. *Id*. On April 26, 2023, the Government filed an objection to the R&R ("Objection") [Dkt. No. 191], and on May 5, 2023, Defendant filed a response. [Dkt. No.193].

## II.   STANDARD OF REVIEW

When a party objects to an R&R, the Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court "may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge." *Id.* The Court "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

### III. DISCUSSION

The Federal Rules of Evidence provide:

A witness who is qualified as an expert by knowledge, skills, experience, training, or education may testify in the form of an opinion or otherwise if:

a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

b) The testimony is based on sufficient facts or data;

c) The testimony is the product of reliable principles and methods; and

d) The expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. In its Objection, the Government takes issue with the R&R in its entirety, arguing that Dr. Galusha is unqualified and that her testimony is unreliable, irrelevant, and would be unhelpful to the jury. Dkt. No. 191.

At the outset, several facets of the arguments contained in the Objection were not included in the arguments raised before Magistrate Judge West. For instance, the Government argues that Dr. Galusha should be precluded from testifying because her opinions regarding Defendant's potential TBI is not supported by "the examination of Dr. Scott Roye, PhD, a neuropsychologist with OU's Health Sciences Center." *Id.* at 1. As the Government concedes, Dr. Roye's report was not completed at the time Magistrate Judge West conducted the *Daubert* hearing and issued the R&R. *Id.* at 1, n. 1. The Court need not evaluate Dr. Galusha's report and proffered testimony in relation to Dr. Roye's because the Government has raised this argument for the first time in its Objection. "Issues raised for the first time in objections to the magistrate judge's recommendation

are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996). "[A]n unsuccessful party is not entitled as of right to de novo review . . . of an argument never seasonably raised before the magistrate." *Id*. (quoting *Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co*., 840 F.2d 985, 990-91 (1st Cir. 1988)). In any event, the Court believes that the jury is perfectly capable of considering the two (2) experts' opinions and reaching an informed decision—based on the experts' qualifications, methodology, reliability and, ultimately, credibility—to the extent said opinions may be in conflict.

The Government also argues in its Objection that Dr. Galusha's testimony is unreliable because of the "speculative nature and uncertainty" of her opinions. Dkt. No. 191 at 3. The Government asserts that Dr. Galusha's testimony at the *Daubert* hearing reinforced said qualities in her opinions, stressing instances in which she opined certain diagnoses or conclusions (et cetera) "could be" or "could have" been caused by one thing or another. *Id*. at 3, *ff*. The Government's argument regarding the "speculative" or "uncertain" nature of Dr. Galusha's opinions is also raised for the first time in its Objection—at least in those words.[1] However, since Dr. Galusha's testimony at the *Daubert* hearing was before Magistrate Judge West in advance of issuance of the R&R, the Court will entertain the argument.

The Court is not convinced that testimony from an expert that something "can" or "could" be the case automatically constitutes impermissible speculation under these circumstances, *i.e*., with respect to the causes and results of brain injuries and other cognitive conditions. This subject is inherently complex. Indeed, besides surface level or generalized opinions, the Court would be more inclined to look suspiciously at expert testimony expressing absolute certainty as to any of the complexities of neuroscience. As addressed in more detail below, Dr. Galusha is educated and

---

[1] *See supra* at p. 4.

credentialed in neuropsychology and has immersed herself in the relevant scientific and medical literature (to which she has also contributed) [Dkt. No. 151, Ex. 3], and she followed "standard protocol" in reaching her opinions [Dkt. No. 191, Ex. 2 at 23:4-11].

As the Government points out, Dr. Galusha conducted extensive testing as part of her examination of Defendant. *Id*. at 9-10.[2] Dr. Galusha also reviewed Defendant's medical records and military records, including records from the Veterans Administration. Dkt. No. 150, Ex. 1. Furthermore, Dr. Galusha conducted a collateral interview with the Defendant's aunt. *Id*. The Court finds that Dr. Galusha's proffered testimony does not constitute speculation, let alone "unsupported speculation." *See Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589-90 (1993) (noting that the subject of an expert's testimony must be "'scientific knowledge' . . . [which] connotes more than subjective belief or unsupported speculation.").

The Government separately argues that Dr. Galusha lacks the requisite expertise because she "has never been permitted to testify at trial and opine to a jury about how TBIs and PTSD impact an individual's capacity to commit a crime . . . ." Dkt. No. 191 at 7. But the Government identifies no previous instance in which Dr. Galusha has been prevented from testifying as to any subject within her professional expertise. Indeed, at the *Daubert* hearing, Dr. Galusha clarified that she "spoke to the impact of trauma in front of Judge Mark Pittman, in the U.S. District Court for the Northern District of Texas, in two different cases." *Id*., Ex. 2 at 16:12-14. Dr. Galusha

---

[2] "The tests Dr. Galusha administered to defendant are as follows: Test of Memory Malingering; Word Choice; Dot Counting Text; Wechsler Adult Intelligence Test Scale-IV; Wide Range Achievement Test-5; Trail Making Tests, Parts A & B; Reynolds Interference Test; Ruff Figural Fluency; Vocabulary Assessment Scales Expressive and Receptive; Letter and Category Fluency; Digit Vigilance Test; Conners Continuous Performance Test; Wechsler Scale-IV (Logical memory and Visual Reproduction subtests only); Rey-Osterrieth Complex Figure Test; California Verbal Learning Test-3; Grooved Pegboard; Personality Assessment Inventory; Behavior Rating Inventory of Executive Function – Adult Self-Report Version; Trauma Symptom Inventory-2; PTSD Checklist for DSM-5."

also "testified before U.S. District Judge Karen Scholer in the United States District Court for the Northern District of Texas on PTSD, complex PTSD, and trauma." *Id* at 16:14-17. Dr. Galusha continued:

> **A (Dr. Galusha):** I've spoken to the impact of trauma and complex trauma at the state level in Tarrant County . . . I've testified several times before U.S. District Judge Ada Brown, also in the United States District Court for the Northern District of Texas. I've testified before Judge Brantley Starr. And another State of Texas – several State of Texas courts.
>
> **Q (Defense Counsel):** Is that both on traumatic brain injury and post-traumatic stress syndrome?
>
> **A:** So those were on trauma and complex trauma.
>
> **Q:** Okay.
>
> **A:** I have testified as an expert recently on the impact of a neurodevelopmental disorder. I had another – some of the cases where I have spoken to TBI have not gone to trial or haven't gone to trial yet.
>
> **Q:** Okay. What about post-traumatic stress syndrome?
>
> **A:** All of those cases that I just mentioned were ones that I spoke about – it was mostly PTSD.
>
> **Q:** Okay. Thank you. And you were qualified to testify in those cases?
>
> **A:** Yes, sir.

Dkt. No. 191, Ex. 2 at 16:18 – 17:13. Despite the Government's focus on the stages of litigation at which Dr. Galusha has testified twenty-seven (27) times in the past (motions and sentencing), the Court is convinced that Dr. Galusha is qualified to testify before the jury this case—so long as her testimony is relevant and reliable.

With respect to reliability, the Government readvances its argument that Dr. Galusha's testimony is unreliable because it is a mere rubberstamp of Defendant's "self-serving reporting."

Dkt. No. 191 at 10. Therefore, the Government argues, the testimony constitutes testimony about the credibility of the Defendant, which an expert is not permitted to give. *Id*. at 11.

The Court acknowledges that "[t]he credibility of witnesses is generally not an appropriate subject for expert testimony." *United States v. Toledo*, 985 F.2d 1462, 1470 (10th Cir. 1993). However, the Court disagrees with the Government's characterization of Dr. Galusha's testimony as vouching for Defendant's credibility. The federal rules are clear that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." FED. R. CIV. P. 703. Medical examinations of living patients rely heavily on, among other things, information obtained from the patient. Further, Dr. Galusha stated in her report that she followed "standard protocol," which included "effort and motivation testing [showing] that [Defendant] appeared to put forth a good effort during tests of cognitive and intellectual functioning . . . That is, there was no indication that he was malingering cognitive impairment or attempting to 'dumb down' his cognitive or intellectual abilities during testing." Dkt. No. 150, Ex. 1 at 5. The Court is satisfied that Dr. Galusha is qualified, that her methodology is sound, and that her report and testimony are reliable.

With respect to relevance, the Government argues that Dr. Galusha's testimony is irrelevant, that its "prejudicial effect greatly outweighs [its] probative value," and that it would "confuse and mislead the jury." Dkt. No. 191 at 12. This argument relies on the Government's contention that Dr. Galusha's "opinions are speculative in nature." *Id*. ("The amount of times Dr. Galusha uses the words 'could,' 'may,' and 'possible' to couch her opinions along with the plethora of other words and phrases she uses that are shrouded with uncertainty is mind-boggling

8

and concerning."). The Court has addressed and rejected this argument with respect to Dr. Galusha's qualifications.[3]

"Relevance is about whether the expert testimony 'will assist the trier of fact' or whether it instead falls 'within the juror's common knowledge and experience' and 'will usurp the juror's role of evaluating a witness's credibility.'" *United States v. Wofford*, 766 Fed. Appx. 576, 581 (10th Cir. 2019) (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006)). The Court does not believe that the intricacies of PTSD and/or the effects of a traumatic brain injury fall within a juror's common knowledge. Moreover, the Court has already explained that Dr. Galusha's report and testimony do not serve to buttress or in any way vouch for the Defendant's credibility.[4] The Court finds that Dr. Galusha's opinions will serve to inform and educate the jury and that her report and testimony are therefore relevant. Altogether, the Court finds that Dr. Galusha is highly qualified, that her methodology is sound and reliable, and that her opinions on the subject on which she is offered to testify are relevant.

Lastly, as alluded to above, the Court is aware that the Government has retained its own expert, Dr. Scott Roye, PhD, who also conducted a neuropsychological examination of Defendant and issued a report. Dkt. No. 191, Ex. 3. Dr. Roye, like Dr. Galusha, is a neuropsychologist. *Id*. The Court is confident that the jury can evaluate the qualifications, methodologies, and opinions of the parties' experts, and, where the experts' opinions may diverge, decide which opinion carries more credibility. Moreover, as the R&R stresses again and again, the Government will be entitled to cross-examine Dr. Galusha as to each concern is has expressed in its motion in limine and in its

---

[3] *See supra* at pp. 5-6

[4] *See supra* at p. 7

objection to the R&R.  However, the Court finds that none of the Government's concerns warrant the exclusion of Dr. Galusha from testifying at trial.

    IT IS THEREFORE ORDERED that the Court ACCEPTS the Magistrate Judge's R&R [Dkt. No. 183], DENIES the Government's motion in limine [Dkt. No. 150], and OVERRULES the Government's Objection to the R&R [Dkt. No. 191].

Dated this 15th day of May, 2023.

*[signature]*
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE